# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br>Genaro Perez Arriaga,<br>Debtor,<br><br>And<br><br>Basic Crating & Packaging Inc.<br><br>Plaintiff,<br>v.<br>Genaro Perez Arriaga,<br><br>Defendant. | Chapter 7<br><br>No. 25-10951<br><br><br><br>Adversary:<br><br>Honorable: David D. Cleary |

## ADVERSARY COMPLAINT OBJECTING TO DISCHARGE OF DEBT PURSUANT TO 11 U.S.C. § 523

NOW COMES Basic Crating & Packaging Inc. ("BCP"), Creditor and Plaintiff herein, and through its Attorneys, Lavelle Law, Ltd., brings this adversary proceeding pursuant to 11 U.S.C. § 523 and Rules 4004 and 7001 of the Federal Rules of Bankruptcy Procedure, and for its Adversary Complaint Objecting to Discharge of Debt against Defendant, Genaro Perez Arriaga, states as follows:

## NATURE OF THE COMPLAINT

1. BCP brings this action to obtain a judgment declaring that the debt of at least $200,000 Genaro Perez Arriaga owes to BCP is non-dischargeable because it resulted from defalcation, embezzlement, larceny, and/or willful and malicious injury to BCP. While Genaro Perez Arriaga was employed and earning compensation from BCP, he accessed BCP's Confidential Information, transferred it to himself and third parties without BCP's knowledge or

1

consent, did not return it to BCP after he resigned, and used it to develop business for a direct competitor of BCP: DeMoss Manufacturing Inc. ("DMI"). Genaro Perez Arriaga also instructed BCP employees to deliver BCP's property to DMI without BCP's knowledge or consent, failed to return that property, and resold it for a profit to DMI.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. § 727, as well as the general order for referral of bankruptcy-related matters effective in the United States District Court for the Northern District of Illinois.

3. Venue is proper in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (J). To the extent that this Complaint sets forth claims that are not core proceedings, BCP consents to this Court hearing and determining such matters pursuant to 28 U.S.C. § 157(c)(2).

## PARTIES

5. Plaintiff and Creditor Basic Crating & Packaging, Inc. ("BCP") is an Illinois corporation that does business within the State of Illinois and has a principal place of business located at 1525 Chase Avenue, Elk Grove Village, Cook County, Illinois 60007.

6. Genaro Perez Arriaga, Debtor and Defendant (hereinafter the "Defendant"), is an individual residing at 5024 Circle Court, Apt. 1005, Crestwood, Illinois 60418.

## FACTS COMMON TO ALL COUNTS

7. Since 2011, BCP has operated a packing and crating company that offers lumber services and packaging solutions, including wood crates and pallets, as well as racking, custom skids, and plastic pallet solutions to customers across the Chicagoland area.

2

8. The packaging and crating industry in Chicagoland is competitive and BCP has taken significant efforts over the last 14 years to develop a loyal, repeat customer base.

9. On June 9, 2020, Defendant entered into a written Employment Agreement with BCP. A true and accurate copy of Defendant's At-Will Employment Agreement is attached hereto and incorporated as Exhibit A.

10. Defendant acknowledged under the Employment Agreement that BCP developed "Confidential Information," defined as BCP's "trade secrets as defined under Illinois law and, except as restricted by applicable law, any other information or material that is not generally known to the public and that is generated, collected by, or utilized in the operations of [BCP] and relates to the actual or anticipated operations, research, or development of [BCP] or [BCP]'s actual or prospective clients." See Ex. A at 1.

11. Defendant's Employment Agreement with BCP specifies that BCP's Confidential Information includes but is not limited to all client, supplier, and vendor lists; databases; contracts; product designs; technical know-how; pricing and cost information; research and development work; software; business plans; projections; market research; marketing strategies; sales information; and all other competitively sensitive information with respect to the Company, whether or not it is in tangible form. See Ex. A at 1.

12. If BCP's competitors learned BCP's Confidential Information, they could calculate BCP's manufacturing costs and profit margins, utilize BCP's product designs, customize orders to fit unique customer needs, and beat BCP to the market with novel solutions in the packaging and crating industry.

13. Defendant's Employment Agreement with BCP expressly prohibits Defendant from "utiliz[ing] for any purpose other than for a legitimate business purpose solely on behalf of [BCP]

3

or directly or indirectly, disclose to anyone outside of [BCP], [BCP]'s Confidential Information...." See Ex. A, § 8(b).

14. Defendant's Employment Agreement with BCP provides that: "[a]ll memoranda, notes, lists, records, engineering drawings, technical specifications, and related documents and other documents or papers (and all copies thereof) relating to [BCP] or [BCP]'s business, including such items stored in computer memories, microfiche, or by any other means, made or compiled by or on behalf of Employee during the course of Employee's employment by [BCP], or made available during the course of Employee's employment by [BCP] . . . relating to [BCP] . . . shall be [BCP]'s property and shall be delivered to [BCP] promptly upon the termination of Employee's employment with [BCP] or at any other time upon request." See Ex. A, § 9(a).

15. Defendant was employed by BCP from June 9, 2020, until on or around April 25, 2024.

16. Defendant initially worked for BCP as a Warehouse Supervisor and was later promoted to Production Manager.

17. Defendant's responsibilities as Production Manager of BCP included, among other obligations, analyzing build sheets, developing production schedules with product details, and coordinating customer interaction regarding production.

18. While employed by BCP, Defendant compiled memoranda, notes, lists, records, engineering drawings, technical specifications, and/or other documents and/or papers relating to BCP and/or BCP's business.

19. While employed by BCP, Defendant had access to BCP's Confidential Information, including but not limited to BCP's production data, product designs, customer lists, vendor lists, and/or pricing.

20. While employed by BCP, Defendant had direct contact with BCP's actual customers and BCP's potential customers and learned and accessed Confidential Information regarding operations and development of some of BCP's customers.

21. On or around February 24, 2023, while Defendant was employed by BCP, DMI was incorporated in Illinois as a packing company that, like BCP, offers lumber services and packaging solutions, including wood crates and pallets, as well as racking, custom skids, and plastic pallet solutions to customers across Chicagoland.

22. DMI's business was similar to and competitive with BCP's business.

23. DMI's principal place of business was approximately 25 miles from BCP's principal place of business.

24. On May 18, 2023, while employed by BCP, Defendant shared a spreadsheet entitled "Bolingbrook Production" with Donald DeMoss (f/k/a Donald Arnold), who was the President of DMI. This spreadsheet contained Confidential Information of BCP.

25. On or around January 31, 2024, while employed by BCP, Defendant became the Treasurer of DMI.

26. Defendant worked for DMI while he was employed by BCP and earned compensation from BCP.

27. Defendant was an employee of DMI from at least January 31, 2024, until DMI filed bankruptcy on February 20, 2025.

28. From approximately January 2023 until April 2024, while employed by BCP, Defendant instructed employees of BCP to use BCP's truck to deliver BCP's materials, tools, and products to DMI's warehouse.

29. From approximately January 2023 until April 2024, while employed by BCP, Defendant was involved in reselling BCP's materials and products on behalf of DMI, as if they were DMI's materials and products, to customers Defendant and/or DMI solicited from BCP.

30. From approximately January 2023 until April 2024, while employed by BCP, Defendant used BCP's tools and materials to make products for DMI and resold BCP's products as if they were DMI's products to customers Defendant / DMI solicited from BCP.

31. On several occasions, Defendant earned compensation from DMI for reselling BCP's materials and products to customers on behalf of DMI without BCP's consent.

32. BCP never consented to or authorized Defendant to assume control, dominion, or ownership over any of BCP's Confidential Information, materials, tools, or products.

33. Defendant did not pay BCP for any materials, tools, or products he used and/or resold on behalf of DMI for a profit.

34. While employed by BCP, on or around March 26, 2024 (approximately one month prior to Defendant's resignation from BCP), Defendant was involved in coordinating the delivery of a full truck of wood skids from BCP's warehouse to DMI's warehouse without BCP's knowledge or consent.

35. On or around April 2, 2024, while employed by BCP, (less than one month prior to his resignation from BCP), Defendant was involved in a half trailer of BCP's products and/or materials and/or tools being delivered from BCP's warehouse to DMI's warehouse without BCP's knowledge or consent.

36. On or around April 25, 2024, Defendant voluntarily resigned from his employment with BCP.

37. After Defendant voluntarily resigned from his employment with BCP, Defendant failed to return BCP's Confidential Information to it and, in fact, retained access to BCP's Confidential Information without BCP's knowledge or consent, including but not limited to data in the Bolingbrook Production spreadsheet.

38. After Defendant voluntarily resigned from his employment with BCP, Defendant failed to return any of BCP's products, tools, or materials he instructed BCP employees to deliver to DMI.

39. From approximately January 31, 2024, until his voluntary resignation in April 2024, during his employment at BCP, Defendant received compensation from BCP while engaging in activities for the benefit of DMI, in direct competition with BCP.

40. Defendant deliberately sought out BCP's Confidential Information and trade secrets for the purpose of joining and/or becoming an officer and employee of DMI and using BCP's Confidential Information for his benefit and to BCP's detriment while still employed at BCP and still collecting compensation from BCP.

41. On information and belief, Defendant took Confidential Information and trade secrets with him after ending his employment at BCP for the purpose of using BCP's Confidential Information and trade secrets in his capacity as a DMI employee to the benefit of himself and DMI, to BCP's detriment.

42. When BCP discovered Defendant's actions, BCP filed a lawsuit in the Northern District of Illinois, Case No. 1:24-cv-08143 on September 6, 2024, and filed an Amended Complaint on February 13, 2025, alleging, among other things, that Defendant breached the restrictive covenants in his employment agreement with BCP, violated the Defend Trade Secrets

Act, 18 U.S.C. § 1836, violated the Illinois Trade Secrets Act, engaged in unlawful conversion, and breached his fiduciary duty to BCP.

43. BCP has demanded possession of its Confidential Information, trade secrets, tools, materials, and products from Defendant but Defendant has refused to comply.

44. On July 18, 2025, Defendant filed his voluntary Chapter 7 petition for bankruptcy, as well as schedules and statements of financial affairs and intentions.

45. Defendant disclosed $200,000.00 of debt owed to BCP in his petition.

46. Defendant's bankruptcy filing is not a legitimate attempt by the Defendant to obtain a fresh start by bankruptcy law, but instead Defendant's continuing attempt to prevent BCP from pursuing its claims in federal court claims that would disclose the full extent to which Defendant profited and earned compensation from misappropriating BCP's assets that did not belong to him.

## COUNT I – EXCEPTION TO DISCHARGE
## DEFALCATION UNDER 11 U.S.C. § 523(a)(4)

47. BCP restates, realleges, and incorporates by reference its allegations contained in paragraphs 1-46 as though fully set forth herein.

48. Under 11 U.S.C. § 523(a)(4), a debt is not dischargeable when such debt is a result of "fraud or defalcation while acting in a fiduciary capacity."

49. Defendant acted as a fiduciary to BCP when employed from June 9, 2020, to April 25, 2024, as an employee with access to BCP's Confidential Information.

50. BCP placed special trust and confidence in Defendant as its employee and Defendant accepted BCP's trust and confidence.

51. Defendant owed a fiduciary duty of loyalty to BCP as its employee.

8

52. Defendant committed defalcation while acting in his capacity as a fiduciary to BCP when he transferred BCP's Confidential Information to himself for his own use and benefit to generate income and a profit for himself and BCP's competitor, DMI.

53. Defendant committed defalcation while acting in his capacity as a fiduciary to BCP when he exercised unauthorized and wrongful assumption of ownership over BCP's property by instructing BCP's employees to deliver tools, materials, and products from BCP's warehouse to DMI's warehouse without BCP's knowledge or consent.

54. As a direct and proximate result of Defendant's defalcation, BCP was damaged in the amount of at least $200,000.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests that this Court deny the discharge of the debt owed to it by Debtor Genaro Perez Arriaga due to his defalcation while acting in a fiduciary capacity pursuant to 11 U.S.C. § 523(a)(4), and any and all other relief this Court deems just, proper, and equitable.

### COUNT II - EXCEPTION TO DISCHARGE
### EMBEZZLEMENT UNDER 11 U.S.C. § 523(a)(4)

55. BCP restates, realleges, and incorporates by reference its allegations contained in paragraphs 1-46 as though fully set forth herein.

56. Under 11 U.S.C. § 523(a)(4), a debt is not dischargeable when such debt results from embezzlement, which is defined as fraudulent appropriation of property by a person to whom such property was entrusted or into whose hands it has lawfully come.

57. Prior to the filing of Defendant's bankruptcy petition on July 18, 2025, and while still employed at BCP, Defendant appropriated BCP's Confidential Information by transferring it to, and accessing it from, his personal Gmail account.

58. BCP entrusted Defendant with access to its Confidential Information while Defendant was employed at BCP from June 9, 2020, to April 25, 2024.

59. Defendant fraudulently appropriated BCP's Confidential Information for his own benefit to develop business for DMI.

60. Defendant did not return BCP's Confidential Information to BCP following his resignation of employment from BCP on or around April 25, 2024.

61. Defendant had knowledge that his access and use of BCP's Confidential Information following his resignation of employment from BCP on or around April 25, 2024, was devoid of authorization from BCP.

62. As a result of Debtor's misappropriation of BCP's Confidential Information, BCP was damaged in the amount of at least $200,000.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests that this Court deny the discharge of the debt owed to it by Debtor Genaro Perez Arriaga due to his embezzlement pursuant to 11 U.S.C. § 523(a)(4), and any and all other relief this Court deems just, proper, and equitable.

### COUNT III - EXCEPTION TO DISCHARGE
### LARCENY UNDER 11 U.S.C. § 523(a)(4)

63. BCP restates, realleges, and incorporates by reference its allegations contained in paragraphs 1-46 as though fully set forth herein.

64. Under 11 U.S.C. § 523(a)(4), a debt is not dischargeable when such debt is a result of larceny, which entails a wrongful taking of property from its rightful owner with fraudulent intent to convert such property to one's own use without the owner's consent.

65. Defendant wrongfully took BCP's materials, tools, and products without BCP's knowledge or consent.

66. Defendant took BCP's materials, tools, and products with fraudulent intent to convert them to his own use and resell them on behalf of DMI.

67. As a result of Defendant's wrongful taking of BCP's property, BCP was damaged in the amount of at least $200,000.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests that this Court deny the discharge of the debt owed to it by Debtor Genaro Perez Arriaga due to larceny pursuant to 11 U.S.C. § 523(a)(4), and any and all other relief this Court deems just, proper, and equitable.

### COUNT IV - EXCEPTION TO DISCHARGE
### WILLFUL AND MALICIOUS INJURY
### TO ANOTHER ENTITY AND ITS PROPERTY UNDER 11 U.S.C. § 523(a)(6)

68. BCP restates, realleges, and incorporates by reference its allegations contained in paragraphs 1-46 as though fully set forth herein.

69. Under 11 U.S.C. § 523(a)(6), a debt is not dischargeable when such debt is a result of "willful and malicious injury by the debtor to another entity or to the property of another entity."

70. Defendant deliberately and intentionally injured BCP by transferring BCP's property to DMI, transferring BCP's Confidential Information to himself, sharing BCP's Confidential Information with DMI, using BCP's Confidential Information to his benefit to develop business and profits for DMI as a competitor of BCP, and failing to return BCP's Confidential Information and property to BCP upon his resignation from employment at BCP.

71. When Defendant transferred BCP's property and Confidential Information to himself, shared BCP's Confidential Information with DMI, and refused to return the same upon his resignation from BCP, Defendant did so with conscious disregard of his obligations under the Employment Agreement and fiduciary duty to BCP without just cause or excuse.

11

72. Defendant's willful actions against BCP injured BCP.

73. Based upon the foregoing, Defendant willfully injured BCP within the meaning of 11 U.S.C. § 523(a)(6), and his indebtedness, therefore, is non-dischargeable.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests that this Court deny the discharge of the debt owed to it by Debtor Genaro Perez Arriaga due to willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6), and any and all other relief this Court deems just, proper, and equitable.

Respectfully submitted,
Basic Crating & Packaging Inc.

By: **Lavelle Law, Ltd.**

/s/ Timothy M. Hughes 6208982
One of his attorneys

**Lavelle Law, Ltd.**
Timothy M. Hughes
1933 N. Meacham Rd., Suite 600
Schaumburg, Illinois 60173
847-705-7555
thughes@lavellelaw.com

https://lavellelaw.sharepoint.com/sites/Shared/Shared Documents/8501-8750/8583/DeMoss BK/Genaro BK/09.25.25.Adv.Complaint.Objecting.Discharge.docx